IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DIANA SUE SCHAFFER, <br><br> Plaintiff, <br> v. <br><br> SALT LAKE CITY CORPORATION, et al., <br><br> Defendants. | **SEALED MEMORANDUM DECISION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT** <br><br> Case No. 2:11-cv-705 BCW <br><br> Magistrate Judge Brooke Wells |

This matter is before the Court on three motions for summary judgment. Defendants Gail Cameron and Ashely Hollingshead jointly move for summary judgment in their favor.[1] Next, Defendant Officer Timothy Stumm moves the Court for summary judgment.[2] And finally, Defendant Salt Lake City Corporation (the City) seeks summary judgment.[3] For the reasons set forth below, the Court grants summary judgment for each of the respective Defendants.[4]

## I. BACKGROUND

Plaintiff Diana Sue Schaffer has asserted claims under 42 U.S.C. § 1983 against Defendants Gail Cameron and Ashely Hollingshead, who are parking enforcement officers (PEOs) for Salt Lake City Corporation,[5] and Police Officer Timothy Stumm in their individual capacities based on alleged violations of Ms. Schaffer's constitutional rights. Ms. Shaffer also brings claims against Salt Lake City (the City) based on its ratification of the alleged

---

[1] Docket no. 50.

[2] Docket no. 49. This motion is currently sealed.

[3] Docket no. 48.

[4] The Court seals this order based on the fact that one of the motions for summary judgment is sealed. The parties may move to unseal this order.

[5] Complaint ¶¶ 5-6.

unconstitutional conduct of the PEOs and its "deliberate indifference to the rights of its citizens as a result of its failure to supervise its PEOs and its Police Officers."[6] Each Defendant has moved for summary judgment on Plaintiffs' claims. The following facts give rise to this dispute.

On November 7, 2008, Ms. Schaffer and her two minor children, M.S. and G.S., attended a political rally at City Creek Park protesting Proposition 8 in California and the LDS Church's stance regarding the Proposition.[7] Ms. Shaffer parked her large, red Dodge pickup truck on Second Avenue facing eastbound at approximately 150 East and 2nd Avenue.[8] The truck was a rental vehicle because Ms. Schaffer had been in an accident three days earlier on November 5th. Ms. Schaffer parked in a no parking zone. During the time Ms. Schaffer's truck was parked, Defendants and city PEOs Gayle Cameron and Ashley Hollingshead were issuing parking citations on Second Avenue. They double-parked their City vehicle, a white Chevrolet Cavalier, on the south side of Second Avenue, also facing east. The rear passenger-side quarter panel of the Cavalier was just north of the front driver's-side quarter panel of Ms. Schaffer's red truck.

As she approached her truck, Ms. Schaffer noticed that PEO Cameron was engaged in a confrontation with an angry citizen, Ms. Garmendia, whose vehicle had been ticketed.[9] Ms. Schaffer overheard Ms. Garmendia request a police officer and she also discovered that she had been issued a parking ticket by PEO Hollingshead. Ms. Shaffer put her children in the truck, then approached PEO Cameron and asked her for her badge number.[10] PEO Cameron replied that she did not give Ms. Schaffer the parking ticket, rather it was PEO Hollingshead. PEO Cameron gave Ms. Schaffer her badge number after being asked for it again.

---

[6] Op. p. xiv, [docket no. 60](docket no. 60).

[7] Complaint ¶ 22.

[8] *Id.* at ¶¶ 24-25.

[9] *Id.* at ¶¶27-29.

[10] *Id.* at ¶¶ 31-34.

As Ms. Schaffer took her ticket from the truck she asked PEO Hollingshead "Hey, can you give me a break, we were only parked here a few minutes?"[11] PEO Hollingshead declined responding that it would not be fair to others who received tickets. Ms. Schaffer then helped her son into the back seat of the truck and continued to hear Ms. Garmendia yelling at the PEOs. PEO Cameron was on the phone with police regarding the angry citizen Ms. Garmendia Ms. Schaffer asked the PEOs to please move their vehicle and neither one responded. Ms. Schaffer then backed her truck up and pulled around their white Cavalier that was parked in the street. As Ms. Schaffer drove by she heard the PEOs hitting her truck and yelling "you almost hit us."[12] Ms. Schaffer stopped, proceeded to get out and while talking with PEO Cameron, Ms. Garmendia started yelling at her because of what she did.[13]

Ms. Schaffer's child M.S. opened her passenger side door and told the parking officers "We told you to move." M.S. stated that she only had 5 or 6 inches of space between the truck and the white Cavalier city vehicle. The PEOs told Ms. Schaffer that a police officer was responding to the scene and that she needed to stay. Rather than waiting Ms. Schaffer got back into her truck and left.

PEOs Hollingshead and Cameron believed Ms. Schaffer was frustrated with getting a ticket and purposefully drove her truck in a manner that was dangerous to their safety. Officer Stumm arrived on the scene and the PEOs told him what had happened. As the PEOs left to fill out witness statements back at the police station they noticed the driver-side rear view mirror of the City vehicle had been damaged presumably in the incident with Ms. Schaffer. Based in part

---

[11] *Id.* at ¶39.

[12] *Id.* at ¶42.

[13] *Id.* at ¶45.

on the PEO's statements Officer Stumm went to Ms. Schaffer's house to question her further. Neither PEO Hollingshead nor Cameron accompanied Officer Stumm to Ms. Schaffer's home.

Prior to going to Ms. Schaffer's home, Officer Stumm asked a crime lab technician to document "visible damage to the driver's side mirror of the [PEO's] car."[14] Officer Stumm traced the license plate number of the red Dodge truck he was given by the PEOs to Ms. Schaffer. He then went to Ms. Schaffer's house where Officer Stumm found the truck in the driveway. He observed handprints on the passenger side of the truck consistent with the PEO's description of events. Officer Stumm rang the doorbell and asked for Ms. Diana Schaffer. When she came to the door her description matched that given by the PEOs. Officer Stumm then detained Ms. Schaffer, handcuffed her and read her Miranda rights. Further photographs of the truck were taken and additional evidence was documented by a crime lab technician. Officer Stumm spoke with Ms. Schaffer's daughter who was in the truck at the time of the incident. She corroborated some statements of the PEOs.

After consulting with other officers, Officer Stumm concluded that he had probable cause to arrest Ms. Schaffer on two counts of aggravated assault.[15] Subsequently a preliminary hearing was held during which the PEOs testified. Officer Stumm did not testify at the preliminary hearing.[16] After hearing the evidence the presiding magistrate found probable cause to bind Ms. Schaffer over for trial. The District Attorney's Office prosecuted "Ms. Schaffer for aggravated assault and criminal mischief."[17] Following her acquittal, Ms. Schaffer asked Defendant Salt Lake City to investigate the incident claiming the PEOs lied in their witness statements and that

---

[14] Officer Stumm Mtn. for Summary Judgment p. 2, docket no. 49.

[15] Op. p. xiii.

[16] Complaint ¶¶93-103.

[17] *Id.*

Officer Stumm inappropriately relied on these statements and other inappropriate evidence to arrest her. Ms. Schaffer alleges the City failed to conduct a meaningful investigation and it was so inadequate as to ratify the unconstitutional conduct of the PEOs and Officer Stumm. This suit followed.

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[19] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[20] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[21] "If the burden of persuasion at trial would be on the non-moving party, ... the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[22] "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."[23] The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

---

[18] Fed. R. Civ. P. 56(a).

[19] See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[20] See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[21] *Anderson*, 477 U.S. at 249.

[22] *Celotex Corp. V. Catrett*, 477 U.S. 317, 331 (1986).

[23] *Anderson*, 477 U.S. at 252.

portions of the pleadings, depositions, and answers to interrogatories that support summary judgment. To defeat a motion for summary judgment, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts."[24] Rather, a plaintiff must come forward with some evidence establishing his claim.

### III. DISCUSSION

Plaintiff brings this action under 42 U.S.C. § 1983 against Officer Stumm and PEOs Hollingshead and Cameron alleging violations of her constitutional rights. Ms. Schaffer further asserts that the City ratified the unconstitutional conduct of the other Defendants and as such should be held liable. Each of the Defendants moves for summary judgment on the §1983 claims.

Ms. Schaffer argues summary judgment is improper for the PEOS because "it is clear that there exists a triable issue whether the PEOs committed a constitutional violation."[25] Further the PEOs were acting under color of law because they were engaged in conduct related to the performance of their duties and not that of private actors. Thus, the PEOs "initiated or continued the prosecution of Ms. Schaffer."[26]

Plaintiff further argues that summary judgment for Officer Stumm is inappropriate because the facts show that he presented false information either "knowingly or with a reckless disregard of the facts."[27] Accordingly there is a triable issue concerning whether or not Officer Stumm had probable cause to arrest her. And, such recklessness by Officer Stumm led to a malicious prosecution of Plaintiff.

---

[24] *Matsushita*, 475 U.S. at 586.

[25] Op. at xiv.

[26] *Id.* at xv.

[27] *Id.* at xv.

Plaintiff further argues that summary judgment for Officer Stumm is inappropriate because the facts show that he presented false information either "knowingly or with a reckless disregard of the facts."[28] Accordingly there is a triable issue concerning whether or not Officer Stumm had probable cause to arrest her. And, such recklessness by Officer Stumm led to a malicious prosecution of Plaintiff.

Finally, Ms. Schaffer argues that summary judgment is inappropriate on her claims against the City because "there exists a triable issue whether Officer Stumm or the PEOs committed constitutional violations."[29] Further, there is a triable issue as to whether the City is liable based upon its failure to conduct a meaningful review of the other Defendants. Thus, according to Ms. Schaffer, a jury "could reasonably conclude that the City's failure to supervise its employees, through its failure to investigate and correct their conduct, reflected deliberate indifference to the highly predictable or plainly obvious consequences of that failure."[30]

The Court considers each of Ms. Schaffer's arguments against summary judgment and Defendants arguments in behalf of summary judgment in turn.

### A. Gail Cameron's and Ashely Hollingshead's Joint Motion for Summary Judgment

"To state a claim under § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[31] To determine whether a defendant acts under color of law, federal courts apply the following tests: (1) the nexus test, (2) the symbiotic relationship test, (3) the joint action test, and (4) public function test.[32] "Under each of these

---

[28] *Id.* at xv.

[29] Op. p. xv.

[30] *Id.* at xv-xvi.

[31] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[32] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

four tests, 'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'"[33] Plaintiff relies on the nexus and joint action tests to support her § 1983 claims.

### (i) The Nexus Test

"[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of a 'real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'"[34] "Under the nexus test, a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct such that the conduct 'may be fairly treated as that of the State itself.'"[35] Based upon this approach, a state normally can be held liable for a private decision only when it has exercised "coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[36]

"Where state action is concerned, the proper inquiry is whether, *at the time of the alleged constitutional violation*, the defendant was a state actor."[37] In the instant case Ms. Schaffer alleges that PEOs Cameron and Hollingshead violated "the Fourth and Fourteenth Amendments based on their unlawful arrest, detention and participation in the prosecution of Ms. Schaffer, all in violation of 42 U.S.C. § 1983."[38] Thus, the Court looks to the alleged constitutional violation based on the events surrounding their reporting the incident that occurred on November 7, 2008, as set forth above.

---

[33] *Id.* (quoting

[34] *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).

[35] *Gallagher*, 49 F.3d at 1448.

[36] *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

[37] *How v. City of Baxter Springs, Kansas*, 217 Fed.Appx. 787, 794 (10th Cir. 2007).

[38] Compl. ¶ 1.

Here, Plaintiff has not pled that either of the PEOs used their badge of authority when they reported the incident. Ms. Schaffer, however, relies on the fact that during the time of the encounter "the PEOs were performing their duties as parking enforcement officers, they were in uniform, they were driving a City-owned vehicle that they claimed was damaged in the encounter, and Officer Cameron exhibited a show of authority by commanding Ms. Garmendia to leave and then commanding Ms. Schaffer not to leave the scene."[39] Plaintiff also points to the fact that the PEOs were being paid by the City when they drove to the Public Safety Building and completed the witness statements. Finally, Ms. Schaffer also cites to the PEOs involvement during the prosecution as further support for a nexus.

The PEO's conduct and the time in which it occurred appear on its face to create a sufficient nexus between the incident and "state action" to survive summary judgment. But, state employment is not sufficient *per se* to render a defendant a state actor. Thus, "[e]ven when state employees are performing the services for which the state pays them, they may not be state actors while performing functions that the state has no right to control."[40] This is true even when an employee uses state materials in furtherance of their activities.[41]

Here, the PEOs reported an alleged crime to the police just as any other private citizen could do. They were under no state control to do so and the fact that they were being paid and had been acting in their official duties prior to the time of the incident does not create a nexus between their reporting the incident and their position as parking enforcement officers for the

---

[39] Op. p. 7.

[40] *Hall v. Witteman*, 584 F.3d 859, 866 (10th Cir. 2009); *see Polk County v. Dodson,* 454 U.S. 312 (1981) (public defender is not state actor when performing duties as counsel); *Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir.1997) (prison chaplain not a state actor when performing spiritual duties and state employees' "acts ... in the ambit of their personal pursuits are plainly excluded.").

[41] *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996) (finding that police officers were not acting in their official capacity for a § 1983 claim although they were using state materials in furtherance of their prank).

9

City. Indeed, the Court finds this case analogous to both the *How*[42] and *Hall*[43] cases that involved government employees acting in their personal capacities.[44]

### (ii) Joint Action Test

"A charge of joint action amounts to alleging some agreement between private and public actors to violate plaintiff's constitutional rights."[45] Thus, for the joint action test to be met "state and private entities must share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action."[46] To prove a conspiracy between private parties and the government under § 1983, an agreement or "meeting of the minds" to violate constitutional rights must be shown.[47] The Tenth Circuit has repeatedly recognized that "the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983."[48]

---

[42] 217 Fed.Appx. 787, 794

[43] 584 F.3d 859

[44] *How*, 217 Fed.Appx. at 794 (holding that the city clerk in filing defamation charges was acting in private capacity and not under color of state law); *Hall*, 584 F.3d at 866 (holding county attorney did not engage in state action sufficient to support § 1983 claim). In contrast, the cases relied upon by Plaintiff have defendants that used their government authority to accomplish the alleged constitutional depravation. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1429-30 (10th Cir. 1984) (off-duty police officer employed as a private security guard acted under color of state law when he flashed his badge, identified himself as a police officer, and arrested the plaintiff); *Bacon v. Allen*, 06-1222-WEB, 2008 WL 4642330, *9 (D. Kan. Oct. 17, 2008) (where defendant was in police uniform, in patrol car, and stated he had something to discuss with the plaintiff, a jury could reasonably infer the defendant "used the specter of official police business to lure plaintiff from her house"). The factual scenario here is not analogous to the cases relied upon by Plaintiff as there is no evidence that the PEOs used their authority to deprive Plaintiff of a constitutional right.

[45] *Cunningham v. Southlake Center for Mental Health, Inc.*, 924 F.3d 106, 107 (7th Cir. 1991).

[46] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995).

[47] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

[48] *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115 (10th Cir. 1987); *see also Gallo Loecks ex rel. T.L. v. Reynolds*, 34 F. App'x 644, 650 (10th Cir. 2002) ("A private person does not become involved in joint action with a law enforcement agency simply by furnishing information to officers.") (emphasis added); *Jones v. Wal-Mart Stores, Inc.*, 33 F.3d 62, 1994 WL 387887,*3 (10th Cir. 1994) (unpublished) ("An individual does not act under color of law merely by reporting an alleged crime to police officers who take action thereon."); *Carey v. Continental Airlines Inc.,* 823 F.2d 1402 (10th Cir. 1987) (noting that a private persons complaint to police did not equate to acting under color of law for a § 1983 claim); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985.").

Ms. Schaffer asserts that "it is clear that a jury could reasonably conclude that the PEOs acted jointly with Officer Stumm in bringing about the constitutional deprivations suffered by [her]."[49] Plaintiff attempts to circumvent the general rule that providing information to an officer does not create joint action by pointing to the "cooperative action" between the PEOs and Officer Stumm. Plaintiff also cites to the fact that the PEOs made "use of the Police Department's dispatch line to enlist the assistance of Officer Stumm"[50] and drove with him to the Public Safety Building to file a written report. The Court finds these circumstances unavailing. Ms. Schaffer's arguments fail to account for the fact that there is no evidence before the Court that the PEOs shared a specific goal, had a "meeting of the minds" or some sort of agreement with Officer Stumm to violate Ms. Schaffer's constitutional rights. Rather, the undisputed evidence shows the PEOs provided information to Officer Stumm, something which, the Tenth Circuit has repeatedly held did not constitute joint action. Accordingly the Court rejects Plaintiffs assertion of joint action.

Finally, Plaintiff takes issue with the probable cause analysis undertaken to justify her arrest and prosecution. The Court has carefully reviewed the record before it and finds Plaintiffs arguments regarding the probable cause analysis as it relates to the PEOs unpersuasive. In addition, a presiding magistrate independently found probable cause to bind Ms. Schaffer over for trial. The mere fact that Plaintiff was later acquitted does not equate to the PEOs committing some type of violation of Ms. Schaffer's constitutional rights based on alleged failures with probable cause to arrest and prosecute her.

---

[49] Op. p. 12.
[50] *Id.*

In short, the Court finds that based on the undisputed facts no reasonable jury could find in favor of Plaintiff on the multitude of legal theories she sets forth in her Complaint against PEOs Cameron and Hollingshead. [51]

## B. Officer Timothy Stumm's Motion for Summary Judgment

Ms. Schaffer argues that summary judgment for Officer Stumm is inappropriate because the facts show that he presented false information either "knowingly or with a reckless disregard of the facts."[52] Thus, according to Plaintiff, there is a triable issue concerning whether or not Officer Stumm had probable cause to arrest her. And, such recklessness by Officer Stumm led to a malicious prosecution of Plaintiff.

### (i) Probable Cause

The Supreme Court has stated that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity . . . therefore, innocent behavior frequently will provide the basis for a showing of probable cause."[53] The Tenth Circuit has held that an affidavit from a known individual that witnessed the alleged criminal conduct firsthand is enough to establish probable cause.[54] Usually a court assumes a crime victim's or bystanders' veracity in making determinations of reasonable suspicion and probable cause and inconsistencies between affidavits used to establish probable cause do not change the initial arrest."[55] Another important consideration regarding the probable cause

---

[51] *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].").

[52] Op. at xv.

[53] *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983).

[54] *See U.S. v. Jenkins*, 313 F.3d 549, 554-56 (10th Cir. 2002) (finding that an informant's tip may form the basis for probable cause when his identity is known to the police and the details in the affidavit were witnessed firsthand).

[55] *See U.S. v. Torres-Castro*, 374 F.Supp.2d 994, 1010 (D.N.M. 2005) ("The Court ordinarily assumes the crime victims' or crime-scene bystanders' veracity in making determinations of reasonable suspicion and of probable

analysis is whether an officer has made reasonable effort to "'interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of a warrantless arrest and detention.'"[56]

Here, the undisputed facts indicate that at the time Officer Stumm placed Plaintiff into handcuffs he had the following information: (1) signed witness statements from two purported victims that described what occurred; (2) apparent damage to the City vehicle involved in the incident; (3) evidence that the license plate belonging to the alleged vehicle involved in the incident belonged to a truck rented by Plaintiff; (4) Officer Stumm observed this truck parked in the driveway of Ms. Schaffer's home; (5) a match in physical description between Ms. Schaffer when she came to the door and that provided by the PEOs.

"Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been ... committed by the person arrested."[57] The probable cause inquiry is an objective one,[58] and the Court finds that given the aforementioned facts a reasonable person would believe an offense had been committed. For example, the facts indicate there was probable cause to arrest for the crimes of assault or reckless endangerment. An assault is "an attempt, with unlawful force or violence, to do bodily injury to another; (b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or (c) an act, committed with unlawful force or violence, that causes bodily injury to

---

cause."); *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997) (en banc); *see e.g.*, *U.S. v. Knapp*, 1 F.3d 1026, 1029 (10th Cir.1993) ("It is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit.").

[56] *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995)).

[57] *U.S. v. Martin*, 613 F.3d 1296, 1302 (10th Cir. 2010) (internal citations and quotations omitted).

[58] *See Howards v. McLaughlin*, 634 F.3d 1131, 1142 (10th Cir. 2011).

another or creates a substantial risk of bodily injury to another."[59] And, "[a] person commits reckless endangerment if, under circumstances not amounting to a felony offense, the person recklessly engages in conduct that creates a substantial risk of death or seriously bodily injury to another person."[60]

Accordingly, the Court finds the undisputed facts in this case provide a basis to establish probable cause pursuant to the aforementioned standards for Officer Stumm to arrest Plaintiff for some criminal offense.[61]

### (ii) Malicious Prosecution

A claim for a constitutional violation based on malicious prosecution requires that three elements be met.[62] First, a plaintiff must demonstrate that prosecutorial proceedings were initiated.[63] Second, the plaintiff must show that the original action was terminated in the plaintiff's favor.[64] Finally, the plaintiff <u>must demonstrate that there was no probable cause</u> to support the original arrest, continued confinement, or prosecution.[65] The existence of probable cause for arrest is an absolute bar to a § 1983 claim for malicious prosecution.[66]

Because the Court finds that probable cause existed whereby a reasonable person would believe an offense had been committed, the Court rejects Plaintiffs malicious prosecution claims.

---

[59] Utah Code Ann. § 76-5-102(1).

[60] Utah Code Ann. § 76-5-112.

[61] Defendant also cites to the crimes of criminal mischief, leaving the scene of an accident and reckless driving as additional crimes for which there was established probable cause. While the Court does not analyze these particular crimes in detail, it does appear that the facts support probable cause to arrest for these crimes. This is especially true for the crime of leaving the scene of an accident because Ms. Schaffer was specifically asked not to leave by the PEOs following the incident, but still chose to do so.

[62] *See Pierce v. Gilchrist*, 359 F.3d 1279, 1291-94 (10th Cir.2004).

[63] *See id.* at 1291-92.

[64] *See id.* at 1294.

[65] *See id.*

[66] *See Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir.1991).

In addition, during the preliminary hearing Officer Stumm did not testify but the judge still determined there was probable cause to charge Plaintiff with two counts of aggravated assault and one count of criminal mischief. Therefore, any causal link between Officer Stumm and an alleged malicious prosecution would be severed necessitating the dismissal of Ms. Schaffer's malicious prosecution claims.

### C. The City's Motion for Summary Judgment

To establish a claim for liability under § 1983 against a municipality a "plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights."[67] A "'municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'"[68] "'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[69] Thus, municipal liability may be established by a plaintiff showing a formal regulation or policy statement[70] or an informal custom that "amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."[71] Municipal liability may also be based on "the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions . . . of subordinates to

---

[67] *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009).

[68] *Leatherman v. Tarrant County Narcotics Intelligence and Coord. Unit*, 507 U.S. 163, 166 (1993) (quoting *Monell v. Dept. of Social Services of City of New York*, 436 U.S 658, 691 (1978)).

[69] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

[70] *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010).

[71] *Id.* (internal citations and quotations omitted).

whom authority was delegated subject to [the] policymakers' review and approval."[72] Finally, "municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."[73]

The City seeks summary judgment on Plaintiff's § 1983 claims and asserts the following four reasons why it should be granted. First, that the City cannot be held liable "because none of its employees violated Ms. Schaffer's civil rights while acting in their professional capacities."[74] Second, Plaintiff has failed to set forth any evidence that the City's police department has a policy or custom of falsifying evidence to support criminal prosecutions, ignoring exculpatory evidence, or failing to conduct adequate investigations. Third, Ms. Schaffer cannot show that the City violated her rights through deliberate indifference. And finally, Plaintiff has failed to adequately allege that the City ratified the conduct of the other Defendants.

In opposition, Plaintiff does not contest the City's assertion that there is no formal policy under which municipal liability can attach. Further, Plaintiff also admits that there is no pattern of unconstitutional conduct creating liability. Rather, Ms. Schaffer argues that a jury here could reasonably conclude the City is liable for two reasons: first, "a jury could reasonably determine that the City ratified the conduct of Officer Stumm and the PEOs;"[75] Second, a jury could reasonably determine that the City's failure to supervise its employees by not properly investigating the allegations of improper conduct is deliberately indifferent to the alleged violations committed by the City.

---

[72] *Id.*

[73] *Id.*

[74] Mtn. p. 1, [docket no. 48](docket no. 48).

[75] Op. p. 31.

**(i)     Ratification of Conduct**

Plaintiff argues that a municipality can be held liable under a ratification theory if the investigation was so inadequate as to constitute a ratification of their unconstitutional conduct. In support Plaintiff cites to a number of cases.[76]  These cases, however, are all distinguishable from the instant case because in each of them the investigations were shown to be inadequate and in one case there was evidence of subsequent concealment.

Here, a number of individuals were interviewed during the investigation including Ms. Schaffer, a crime lab technician that observed the Dodge truck, another police officer who was present when Ms. Schaffer was arrested, and Officer Stumm's supervising officer.  Plaintiff takes issue with the fact that Officer Stumm was not interviewed drawing an analogy to the *Wright*[77] case and the failure to interview a doctor who was a key witness.  The Court finds that analogy inappropriate because Officer Stumm was away on military leave during the allotted time frame for the investigation and his supervisor was interviewed.  In *Wright* there was no reasonable explanation for failing to interview the doctor witness.

---

[76] *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (noting that a municipality may be liable when "a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final");  *Leach v. Shelby*, 891 F.2d 1241 (6th Cir. 1989), (concluding that the county ratified an employee's unconstitutional actions by failing to properly investigate the employee's conduct); *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985) (finding municipality ratified a sheriff deputy's unconstitutional conduct where there was "subsequent concealment followed by a complete failure to initiate and conduct any meaningful investigation on the part of the Sheriff himself"); *Wright v. City of Canton*, 138 F.Supp.2d 955 (N.D. Ohio 2001) (finding there was enough evidence to sustain a municipal liability claim under a § 1983 where the department failed to interview an independent emergency room doctor that reported her observation of a suspect's excessive injuries resulting from an arrest)

[77] *Wright*, 138 F.Supp.2d 955.

"Ordinarily, ratification is a question for the jury."[78] However, as with any jury question, a plaintiff must still establish that there is a genuine issue of material fact regarding whether ratification occurred.[79] Here Plaintiff has failed to establish a genuine issue of a material fact concerning ratification and the fact that under some case law "Ms. Schaffer can establish her municipal liability claim"[80] does not equate to surviving summary judgment without offering some evidence in this particular case to sustain her municipal liability claim.[81]

### (ii) Failure to Supervise

Next, Plaintiff argues that a jury could reasonably determine that the City's failure to supervise its employees reflected deliberate indifference. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[82] Notice may be established by proving the existence of a pattern of tortious conduct.[83] "Ms. Schaffer concedes that the record would not support a finding of deliberate indifference based on such notice of a pattern of prior incidents."[84] In a limited range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior "if a violation of federal rights is a 'highly

---

[78] *Christie v. Iopa*, 176 F.3d 1231, 1235-36 (9th Cir. 1999).

[79] *See id.*

[80] Op. p. 33.

[81] *Cf. Wright*, 138 F.Supp.2d 955 (finding there was enough evidence to sustain a municipal liability claim under a § 1983 claim); *see Moss*, 559 F.3d at 1169 ("proof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability"); *Barney v. Pulsipher*, 142 F.3d 1299, 1307 (10th Cir. 1998) ("If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.") (quoting *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996)).

[82] *Barney*, 142 F.3d at 1307.

[83] *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).

[84] Op. p. 36.

predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations."[85] It is under this second limited situation that Ms. Schaffer rests her argument asserting that "a single violation can establish the existence of deliberate indifference if there is some other evidence of the City's inadequate treatment of unconstitutional conduct."[86]

Plaintiff's claim fails because she attempts to broaden § 1983 liability in certain failure to train cases to situations where a municipality purportedly failed to adequately investigate a single alleged incident of unconstitutional conduct. A "failure to supervise and tolerance of constitutional violations" in the handling of a "citizen complaint of unconstitutional conduct" cannot be turned into a failure to train case. Moreover, Plaintiffs attempt to persuade this Court to adopt the principles in the failure to train context to cases involving an attack on "the City's approach to handling complaints" is not supported by case law. Thus, Plaintiff's failure to supervise theory fails.

---

[85] *Barney*, 143 F.3d at 1308.

[86] Op. p. 37.

## IV. CONCLUSION AND ORDER

In summary the Court concludes that Ms. Schaffer's claims fail as a matter of law based upon the undisputed facts in this case.

IT IS THEREFORE ORDERED that Defendants' respective motions for summary judgment are GRANTED.[87] This action is dismissed and the Clerk of Court is directed to close this case.

DATED this 29 August 2014.

Brooke C. Wells
United States Magistrate Judge

---

[87] Docket no. 48, docket no. 49, and docket no. 50.